**[J-64-2025] [MO: Dougherty, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 50 EAP 2024 |
| | : | |
| Appellee | : | Appeal from the Order of the |
| | : | Superior Court entered on |
| | : | September 7, 2023, at No. 538 |
| v. | : | EDA 2022, affirming the Order of |
| | : | the Court of Common Pleas of |
| | : | Philadelphia County, Criminal |
| PHILLIP SHIVERS, | : | Division, entered on January 27, |
| | : | 2022, at No. CP-51-CR-0005546- |
| Appellant | : | 2019 |
| | : | |
| | : | ARGUED: September 10, 2025 |

## CONCURRING AND DISSENTING OPINION

**JUSTICE DONOHUE**                                          **DECIDED: July 21, 2026**

We granted review in this case to address whether, consistent with Article I, Section 8 of the Pennsylvania Constitution, law enforcement may effectuate a *Terry*[1] stop based solely on unprovoked flight in a high-crime area. *Commonwealth v. Shivers*, 322 A.3d 879 (Pa. 2024) (per curiam). In granting review of the substantive constitutional issue related to reasonable suspicion, we also sua sponte directed the parties to address whether Phillip Shivers "preserved his 'departure claim' in light of this Court's decisions in *Commonwealth v. Bishop*, 217 A.3d 833 (Pa. 2019) and *Commonwealth v. Alexander*, 243 A.3d 177 (Pa. 2020)." *Id.* The Majority finds the issue preservation question to be dispositive, applying the *Bishop* paradigm to conclude that Shivers' Article I, Section 8 claim was waived. In my view, our direction to the parties led them down the wrong path

---

[1] *Terry v. Ohio*, 392 U.S. 1 (1968).

which ultimately led to the Majority characterizing the claim as one involving *Bishop* waiver.

I think it is unfortunate that judicial resources have been wasted in this matter by searching for waiver. This case was well briefed and argued in the lower courts regarding the constitutional question upon which we granted review. It is also clear that the lower courts could not have granted the relief requested by Shivers because they were bound by controlling Superior Court precedent. If this case actually presented a *Bishop* question, I would find that Shivers' failure to follow its nebulous requirements was not fatal to his appeal. However, having refocused this appeal to procedural requirements, it appears that the waiver in this case is much more basic. No constitutional claim related to flight was raised in the suppression court. This case involves classic waiver under Pennsylvania Rule of Appellate Procedure 302 and has nothing to do with the unique framework applicable to issue preservation under the Pennsylvania Constitution.

Under Rule 302, "[i]ssues not raised in the trial court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). "It is a fundamental doctrine in this jurisdiction that where an issue is cognizable in a given proceeding and is not raised it is waived and will not be considered on a review of that proceeding." *Commonwealth v. Romberger*, 378 A.2d 283, 286 (Pa. 1977).

In this case arising from circumstances involving Shivers' unprovoked flight at the sight of police in a high-crime area, Shivers developed a claim that the Commonwealth did not adequately establish that the relevant area was a high-crime area. As the Majority explains, Shivers anticipated that the Commonwealth would attempt to prove that he was present in a high-crime area. Majority Op. at 3. Shivers sought to hold the

Commonwealth to its burden of proving that the area in question was high crime.[2] He observed that the Philadelphia Police Department compiles and maintains statistics on crime in areas throughout the city, and therefore, he believed that any invocation of the designation high-crime area should be supported with empirical evidence. *See* Motion to Compel Evidence Relating to "High Crime Area," or, in the Alternative, Preclude Testimony of High Crime Area*, 12/14/2019, ¶¶ 3-6. Following multiple hearings, the trial court denied Shivers' motion and proceeded to the suppression hearing. At the suppression hearing, Shivers' focus remained on the high-crime area designation. He continued to assert that the testimony regarding this being an area controlled by a gang and being a high crime-area "had nothing to do with [him]." N.T., 11/16/2020, at 24.

After sentencing, in his concise statement of matters complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b), Shivers continued to assert that the Commonwealth failed to adequately establish that the area was a high-crime area. Pa.R.A.P. 1925(b) Statement, 3/21/2022, ¶¶ 7i-ii. It was only then that Shivers also asserted the novel issue on which this Court granted appeal, i.e., that the reasonable suspicion standard could not be met with evidence of unprovoked flight in a high-crime area. He stated, in relevant part:

> This [c]ourt violated [Shivers'] rights under Article I, Section 8 of [the] Pennsylvania Constitution by holding that police had reasonable suspicion to seize [Shivers] by chasing and tackling him merely because he fled from them in a so-called high[-]crime area. That the seizure occurred in a high[-]crime area should be irrelevant under the Pennsylvania Constitution because that factor unreasonably denies citizens living in those areas the same search and seizure protections of those who are fortunate enough to live in areas with less crime. Further, "high[-]crime area" is a vague factor incapable of an

---

[2] In *Commonwealth v. Lewis*, 343 A.3d 1016, 1026 (Pa. 2025), this Court recently addressed a similar claim where defense counsel argued that there must be "specific empirical data" to support the high-crime area designation.

> acceptable nonarbitrary factual determination necessary to determine an individual's constitutional rights. The Pennsylvania Constitution is more protective than the U.S. Constitution in protecting individuals from unwanted intrusion by police particularly those involving seizure of the person. *See, e.g.*, *Commonwealth v. Matos*, 672 A.2d 767 (Pa. 1996).

Pa.R.A.P. 1925(b) Statement, 3/21/2022, ¶ 7iii. Even within this statement of the issue, Shivers again challenged the high-crime area designation.

On my review, Shivers' counsel did not raise the specific issue at hand—that the reasonable suspicion standard could not be met with evidence of unprovoked flight in a high-crime area—in the trial court. Counsel's focus was on the development of the challenge to the high-crime area designation and rebutting the factual assertion that Shivers was found in a high-crime area. Counsel did not preserve a challenge to the reasonable suspicion analysis built on unprovoked flight in a high-crime area.[3] This is simply waiver under Rule 302.

The Majority shoehorns this case of ordinary waiver into the unique preservation rules applicable to what the Majority refers to as "departure claims," i.e., claims asserting that "the meaning of a provision of the Pennsylvania Constitution departs from its equivalent in the United States Constitution, and that the state provision offers greater protections than its federal analog." Majority Op. at 2. The Majority applies a test drawn from the Supreme Court of New Mexico's *State v. Gomez*, 932 P.2d 1, 8-9 (N.M. 1997) and adopted in *Bishop*, 217 A.3d at 841, which requires courts to determine whether counsel adequately developed an argument for departure in any given case. Applying the test, the Majority focuses on Shivers failure to "develop[] any semblance of an analysis

---

[3] The Majority's citations to the record, Majority Op. at 15 n.9, confirm my reading of the suppression proceedings in this case. In the unique circumstances of this case, it is clear that Shivers' counsel was entirely focused on challenging law enforcement's reliance on the nature of the area — that it was a gas station controlled by a gang in a high-crime area — to establish reasonable suspicion, not on challenging the reasonable suspicion standard per se.

substantiating departure as required by *Bishop*." *See* Majority Op. at 14. The Majority thus resolves the case by determining that Shivers did not comply with the mandate of *Bishop*.

We misdirected the parties by raising *Bishop* and *Alexander*. The Majority perpetuates that error by applying the *Bishop* test which scrutinizes the adequacy of the argument for departure. The test is irrelevant when the issue was not raised in the trial court in compliance with Rule 302. I would not shoehorn this case into the *Bishop* analysis, and doing so here not only does nothing to clarify the application of *Bishop*, it further muddles it. Given the waiver under Rule 302, I would dismiss the appeal as improvidently granted.